**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HELIO FERNANDES da SILVA, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4021** |
| **M2/ROYAL CONSTRUCTION OF LOUISIANA, LLC, ET AL** | |

## ORDER AND REASONS

The Motion for Summary Judgment (Doc. #53) by defendant, BMCI Contracting, Inc. is **DENIED**. The Motion to Certify Class (Doc. # 59) by plaintiffs, Helio Fernandes da Silva, Jose Manuel Zuniga and Valdemir Santos is **GRANTED,** and the collection action is conditionally certified.

## BACKGROUND

In 2006 and 2007, plaintiffs, Helio Fernandes da Silva, Jose Manuel Zuniga and Valdemir Santos were laborers who were hired to perform demolition, clean up and construction work at the Chateau Dijon apartment complex in Metairie, Louisiana, and the Louisburg Square apartment complex in Terrytown, Louisiana. In their Collective Action Complaint, they allege that their rights under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*[1] were violated

---

[1]Section 29 U.S.C. §216(b) of the FLSA provides:

> Any employer who violates the provision of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

because they were not paid for all hours worked, including overtime, and were not paid minimum wage. Plaintiffs also allege that they were sometimes paid with checks that were returned because of insufficient funds. They also allege that they were retaliated against when they complained of the violation of their rights. Plaintiffs named as defendants M2/Royal Construction of Louisiana, LLC; Baseline Construction & Restoration, Inc., Baseline Construction & Restoration of Louisiana, LLC[2]; BMCI Contracting, Inc.; Morris Troxell; Bright Corporation; and Fernando Ohl.

Defendant BMCI moves for summary judgment, arguing that it was not plaintiffs' "joint employer" for purposes of FLSA. BMCI contends that at all times, it was a general contractor which had entered into a "labor only" subcontract with M2/Royal, wherein M2/Royal was to provide labor, supervision and equipment to perform the interior work in the apartment complexes, and therefore it is not an employer under FLSA, and is entitled to a judgment dismissing the FLSA claim against it.

Plaintiffs seek certification of their action as a collective action pursuant to 29 U.S.C. §216(b), authorizing them to sue on behalf of themselves and other employees similarly situated. BMCI contends that plaintiffs have not set forth "substantial allegations" sufficient to establish that plaintiffs and other putative class members are "similarly situated."

---

[2]Baseline was dismissed voluntarily from the suit.

## ANALYSIS

### 1. Motion for Summary Judgment: Employer Status of BMCI

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[3] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[4]

Rule 56(c) provides:

> ... The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

BMCI seeks dismissal of all claims against it, arguing that it was not plaintiffs' employer, either directly or as a joint employer. Through an affidavit from Jamie Boschert, the president of BMCI, defendant asserts that it did not have any common ownership with, or financial interest in, the other defendants. Further, BMCI denies providing the other defendants equipment to perform the work, and avers that its supervisors did not provide supervision or direct the details of the specific work being done by any its subcontract employees. BMCI asserts that it was invoiced by and remitted payment directly to M2/Royal, and did not remit payment directly to the

---

[3] *Amburgey v. Corhart Refractories Corp.*, 936 F. 2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[4] *Celeotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986).

employees of M2/Royal for the work that they performed. BMCI admits that in December 2007, plaintiff Zuniga ceased working for M2/Royal and approached BMCI for employment and that at that time, BMCI hired Zuniga, but independently from the subcontract agreement that previously existed between BMCI and M2/Royal.

Several factors must be considered in determining employer status:

> 1. The degree of control exercised by the alleged employer;
>
> 2. The extent of the relative investments of the worker and the alleged employer;
>
> 3. The degree to which the worker's opportunity for profit or loss is determined by the alleged employer;
>
> 4. The skill and initiative required in performing the job; and
>
> 5. The permanency of the relationship.

*Hopkins v. Cornerstone America*, 545 F. 3d 338, 343 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1635 (2009). No single factor is determinative. *Hopkins,* 545 F. 3d at 343.

Zuniga states in his deposition and his sworn declaration,[5] that he was one of several Spanish or Portuguese workers employed to float and tape sheetrock at the Chateau Dijon

---

[5]BMCI argues that the sworn declarations submitted by plaintiffs with their opposition are invalid because the notary and the affiant were not present together for the giving of the oath and for the signing of the affidavit. Plaintiffs submitted in support of their motion to certify, supplemental translations of their declarations and declarations of other workers which are supported by a sworn declaration of the translator who explains the basis of his or her knowledge of the language used by the affiant. Plaintiffs also submitted affidavits of other workers which BMCI does not contest. BMCI does not argue that the translations of the affidavits are inaccurate. "At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. The plaintiff may satisfy his or her burden through submission of evidence in the forms of pleadings, affidavits, and other supporting documentation." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).

apartments. He states that after the work was completed at the Chateau Dijon site, he was told to report to work at the Louisburg Square apartment complex to do similar tasks. Zuniga stated that BMCI was the general contractor and provided him and the other workers "with all the materials necessary to the work." Zuniga attests that BMCI had a trailer on the premises, had supervisors present daily, inspected the work by Zuniga and the other workers, and communicated instructions to him and the other workers through Carlos Ortega of M2/Royal who would then translate the instructions. Zuniga attaches to his declaration copies of check stubs which reflect payment from BMCI to Zuniga for the period of December 16, 2007, through April 19, 2008.

The sworn declaration of plaintiff Valdemir Santos states that Santos also worked on the same sites. Santos stated that he worked directly for BMCI.

In his sworn declaration, Da Silva said that he received checks from BMCI. Co-workers Antonio Juarez Hernandez, Emmanuel Lara and Fernando Yott also provided sworn declarations. Hernandez states that he "worked for M2/Royal" and installed insulation and sheetrock, among other tasks, for the Louisburg Square apartment complex. Hernandez also states that M2/Royal employees were not on the work site very often and that BMCI had a trailer on the site, had someone on the site every day, and supplied him the materials that he needed to do the job. Hernandez states that a BMCI employee told the M2/Royal supervisor what work needed to be done. Hernandez also states that while both BMCI and M2/Royal had keys to the job site, BMCI usually let the workers in and out. Lara also worked for at Louisburg Square apartment complex and hung, floated and taped sheetrock. He stated that BMCI had a trailer on site and the BMCI

inspected his work and that access to the worksite was controlled "for the most part by BMCI because M2/Royal was not often present." Yott worked at the Louisburg Square apartment complex and used paint and other materials which were provided by BMCI to M2/Royal. Yott also attests that BMCI had a trailer on the worksite, that BMCI inspected his work daily, and that BMCI would tell the M2/Royal supervisor what problems existed with the work.

Applying the factors set forth in *Hopkins* and noting that the definition of employee under the FLSA is broad, the court finds several questions of fact preclude summary judgment. For example, as to the degree of control exercised by BMCI, while the affidavit from BMCI's president denies that BMCI supervised plaintiffs or directed the work performed by them, the sworn declarations from Zuniga and co-workers Hernandez, Lara and Yott state that BMCI had a trailer on site, directed and inspected their work daily and supplied them with the materials to do their work. Further, Zuniga, Santos and da Silva state that BMCI paid them directly. Zuniga has provided the court with check stubs from 2007 and 2008, indicating Zuniga was paid directly by BMCI. Because of the genuine issues of material fact, plaintiffs' claims against BMCI cannot be resolved on summary judgment.

**2. Motion to Certify Class**

Section 216(b) of the FLSA permits employees to bring suit against an employer for a FLSA violation as a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. §216(b). Unlike a class action under Rule 23, a collective action under section 216(b) binds only those employees who affirmatively "opt-in" to the suit: "No employee

shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* District courts have discretion to facilitate providing notice to similarly situated potential plaintiffs in "appropriate cases." *Hoffman-LaRoche Inc. v. Sperling*, 493 U. S. 165, 169 (1989).

Courts have taken two different approaches to resolve the issue of whether plaintiffs are similarly situated to a proposed class: the spurious class action approach, which originated in *Shushan v. University of Colorado*, 132 F. R. D. 263 (D. Colo. 1990); and the "two-step" approach, as in *Lusardi v. Xerox Corp.*, 122 F. R. D. 463 (D. N. J. 1988). Although the Fifth Circuit has explicitly declined to adopt either test, lower courts in this circuit have adopted the "two-step" approach, and the court will follow that precedent.[6]

The Fifth Circuit has explained the two-step test as follows:

> . . . . The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to the potential members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

---

[6] *E.g., Guidry v. Target Corp.*, 2009 WL 1604591 (E. D. La. 2009); *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 876 (E. D. La. 2008); *Lima*, 493 F. Supp. 2d at 797; *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E. D. La. 2004)(two-step approach "is the referred method for making the similarly situated analysis.").

> The second determination is typically precipitated by a motion for "decertification" by the defendant usual filed after discovery is largely completed and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination of the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives - i.e., the original plaintiffs - proceed to trial on their individual claims.

*Mooney v. Aramco*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

At the notice stage, "'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan[.]'" *Id.* at 1214 (*quoting Sperling v. Hoffman-LaRoche, Inc.*, 118 F. R. D. 392, 407 (D. N. J. 1988)). A factual basis is needed to satisfy this first step. *See Hall v. Burk*, 2002 WL 413901, at *3 (N. D. Tex. 2002). Courts require "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry Co. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M. D. Ala. 2003). *See also Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008 (S. D. Tex. 2007)(plaintiff must allege common policy or plan, and make factual showing sufficient to demonstrate that potential plaintiffs together were victims of common policy or plan that violated law).

Courts who have faced the question whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified, whether affidavits of

potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *Lima*, 493 F. Supp. 2d at 798 (*citing Badgett v. Texas Taco Cabana, L. P.*, 2006 WL 2934265, at *2 (S. D. Tex. 2006)). "A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated person may exist." *Lima*, 493 F. Supp. 2d at 798.

Plaintiffs contend that defendants violated FLSA from their "policy and practice of engaging in tardy and incomplete wage payments which operated to compensate the Plaintiffs and others similarly situated at a rate less than the FLSA's mandated minimum wage rate." Plaintiffs also allege "that Defendants withheld overtime wage payments, which are also required by the FLSA, affecting them and others similarly situated."

Zuniga attaches paystubs from M2/Royal, Bright, and BMCI, and his hand-written notes where he kept track of hours that he and a fellow worker worked. Zuniga claims that these documents demonstrate that he worked more than 40 hours per week and was not paid overtime. Zuniga also stated that sometimes he was not paid at all. Zuniga was one of several Spanish or Portuguese speaking workers doing the same repair work.

The sworn declaration of plaintiff Kayla Tellez states that Tellez was hired to tape and finish sheetrock at the Chateau Dijon apartment complex and another apartment complex. Telez states that he often worked more than 40 hours per week but received no overtime pay, and sometimes received no pay at all. Telez states that BMCI and Baseline were present at the sites.

Plaintiff Santos' declaration states that he kept handwritten notes of the hours he worked; that he was not paid overtime; and that during certain periods, he and other workers were not

paid regularly. Similar declarations were provided by co-workers Hernandez, Lara and Yott. In his sworn declaration, plaintiff da Silva contends that for most weeks, he worked more than 40 hours per week at the sites and was not paid overtime. DaSilva also stated that he and the other workers were not paid timely and that they often worked for long periods with no wages paid to them.

Additionally, plaintiffs have filed 33 notices from other individuals of consent to file suit under FSLA. (See docs. # 5, 14, 15, 19, 80, 82, and 86.)

Defendant BMCI argues that while acknowledging that "the notice stage favors leniency," plaintiffs' allegations do not equate to "substantial allegations." BMCI presents the affidavit of BMCI's president who states that during the subcontract agreement between BMCI and M2/Royal, no checks or payments were made by BMCI to any employee of M2/Royal, Baseline, Restoration of Louisiana, LLC, Morris Troxell, Bright, or Fernanda Ohl. BMCI state that da Silva and Zuniga did not become employees of BMCI until after M2/Royal submitted its final invoices to BMCI. BMCI denies ever hiring Santos and Tellez.

Plaintiffs have satisfied their burden of providing substantial allegations for purposes of the "fairly lenient" standard applicable at the notice stage that they are similarly situated to potential class members, and that a class should be conditionally certified. The court orders that notice be given to potential class members, to provide them with the opportunity to opt into this action. Plaintiffs' affidavits aver that they and others worked more than 40 hours per week, and that they were denied paying overtime pay for these hours. Plaintiffs also allege that they were

among many Spanish or Portuguese speaking employees on the job. Plaintiffs make substantial allegations that defendants had a general policy of denying paying overtime wages, and that they and absent class members were together victims of a single decision, policy, or plan. The submissions support that the alleged harm arises from a generally applicable rule, policy or practice rather than from circumstances purely personal to the named plaintiffs. Accordingly, plaintiffs' motion to certify a class is granted, and the class is conditionally certified.

**3. Proposed Notice.**

BMCI argues that the proposed notice is too broad because it contains no allegation against BMCI as the direct employer of the plaintiffs, but only as a joint employer of M2/Royal's employees, which BMCI denies. This objection is overruled and will be taken up in a future motion to decertify. BMCI also objects to the use of "multimedia" to disseminate the notice. BMCI contends that direct mail would be sufficient effectively to disseminate notice because the alleged employers, including BMCI, have the addresses and contract information of the employees. Plaintiffs concur in the suggestion and agree to send notice to the addresses provided, and only if many are returned will they ask that further notice be provided by multimedia.

**4. Order**

**IT IS HEREBY ORDERED**, pursuant to 29 U.S.C. §216 that:

1. Counts I and II of the plaintiffs' Complaint and First Amended Complaint are certified as collective actions, defining the following class:

The class is conditionally certified as follows:

> All non-supervisory manual laborers employed by defendants to perform work involving decontamination, demolition, debris removal, drying, cleaning and reconstruction of the Chateau Dijon apartment complex in Metairie, Louisiana and/or the Louisburg Square Apartments in Terrytown, Louisiana from June 1, 2006, through the disposition of this action.

2. The defendants shall provide to plaintiffs' counsel the following information within the next thirty (30) days:

> A complete list of the names, current addresses, dates of employment, and dates of termination of all workers employed by the defendants from August 25, 2005, to the present who fall within the above class definition.

3. The proposed FLSA Notice is approved, except that Baseline is excluded from the notice because it has been dismissed.

4. Opt-in plaintiffs are granted a period of ninety days (90) days in which to file Consent to File Suit forms, beginning after the complete production of names, last-known addresses (U.S. and foreign) and telephone numbers of potential opt-in members by defendants.

After initial discovery has been conducted and the potential opt-in plaintiffs file their notices of consent, the court will consider a motion filed by the defendants to decertify the class and make the determination of whether the putative members are similarly situated.

New Orleans, Louisiana, this 29 day of October, 2009.

Mary Ann Vial Lemmon

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**